A93A0407. DARIEN BANK v. MILLER et al.
(431 SE2d 165)

ANDREWS, Judge.

The Darien Bank brought this action for the balance due on a promissory note against Miller and McIver. After a jury verdict and judgment was entered in favor of the bank and against Miller in the sum of $16,057.16, the bank appealed claiming the amount of the ver-

dict was inadequate.[1]

In August 1985, Miller and McIver co-signed as makers of a promissory note to the bank in the principal amount of $68,263.40. The August 1985 note was the last in a series of renewals of the original November 1983 promissory note made by McIver in the principal amount of $64,536.15. There was evidence Miller endorsed the November 1983 note as an accommodation party to enable McIver to obtain the original loan, and that Miller's signature as co-maker on the August 1985 note was also as an accommodation party. McIver used the bulk of the original loan to purchase a shrimp boat, which was pledged as collateral to secure the note and subsequent renewals.

The shrimp boat was later seized and stored in Key West by U. S. Customs officials after it was discovered being used to haul marijuana. After the bank obtained the release of its collateral from the government, Miller went to Key West to examine the boat, and testified it was heavily damaged and almost a total loss. With the bank's knowledge, Miller brought the boat back to Georgia to repair and sell it and use the proceeds to reduce the outstanding balance on the note. However, shortly after the boat was docked in Georgia, it was totally destroyed by fire.

The August 1985 renewal note went into default, and the bank brought the present suit to collect amounts due under the note. The bank produced evidence showing the balance due plus attorney fees due under the terms of the note, and deducted from this amount insurance proceeds it recovered as a result of the dockside fire, for a total sum due of $89,560.74. Miller did not contest the bank's figures, but contended the amount claimed due by the bank on the note should be reduced to the extent the bank impaired the value of the collateral by: (1) failing to procure breach of warranty insurance on the boat prior to its seizure, or failing to pursue collection of such insurance, and (2) failing to collect the full amount of insurance coverage due as a result of the fire. Miller claimed that as an accommodation party to the note, he was discharged from the debt to the extent of the impairment. See OCGA §§ 11-3-606 (1) (b); 11-3-415.

In three enumerations of error, the bank attacks the $16,057.16 verdict and judgment as inadequate.

1. The bank's first enumeration claiming the trial court erroneously denied its motion for summary judgment is rendered moot by the entry of a verdict and judgment based on evidence introduced at trial. *Ray v. Atkins*, 205 Ga. App. 85, 91 (421 SE2d 317) (1992).

2. In its second enumeration, the bank claims Miller had no right

---

[1] It appears a default judgment was entered against McIver, and the subsequent trial and this appeal concern only Miller.

to discharge for impairment of collateral under OCGA § 11-3-606 (1) (b) because he was a co-maker and not an accommodation party on the note. Accordingly, the bank contends the trial court erred in denying its motion for a directed verdict seeking a ruling that Miller was not an accommodation party. There was no error in the trial court's denial of the motion.

Evidence showed McIver paid several thousand dollars of the proceeds of the original note to Miller as repayment on a previous debt, but Miller also testified that he signed as a co-maker on the note merely as an accommodation party with the understanding that McIver remained primarily responsible on the note. "A party who signs an instrument in any capacity for the purpose of lending his name to another person thereto is an 'accommodation party' under [OCGA § 11-3-415]. . . ." *Barylak v. Jordan*, 156 Ga. App. 508 (274 SE2d 846) (1980). Although as an accommodation party Miller would remain liable to the bank in his capacity as co-maker (*Brice v. Northwest Georgia Bank*, 186 Ga. App. 871, 872 (368 SE2d 816) (1988)), he would nevertheless retain a right of recourse against his co-maker, and the right to discharge under the provisions of OCGA § 11-3-606 (1) (b) for impairment of collateral. *Bank South v. Jones*, 185 Ga. App. 125, 126 (364 SE2d 281) (1987); see *Schmuckie v. Alvey*, 758 SW2d 31 (Ky. 1988). The intention of the parties is the determinative element in ascertaining whether a co-maker of the instrument is an accommodation party. *Barylak*, supra at 508. The issue was a jury question in this case.

3. Finally, the bank claims the trial court erred in denying its motion for a new trial. The bank sought a new trial on the general grounds that the verdict was not supported by the evidence, and on the additional ground that Miller was not an accommodation party entitled to discharge for impairment of collateral. We determined in Division 2, supra, that the additional ground has no merit.

In moving for a new trial on the basis of an inadequate verdict, a plaintiff generally may not rely solely on a general allegation that the evidence does not support the verdict, but must raise specific grounds in support of why the verdict is not supported by the evidence so that the trial court's ruling is specifically invoked upon the questions presented on appeal. *Selman v. Manis*, 100 Ga. App. 422, 425-427 (111 SE2d 747) (1959). The record does not reflect that the specific arguments made on appeal in support of the bank's claim were addressed to the trial court.

"We recognize that there are cases in which the amount of the plaintiff's recovery may be subject to exact computation and in such cases the excessiveness or inadequacy of the verdict is held in some cases to have been properly presented by a general ground of motion for new trial." Id. at 427. However, this is not the rule where the de-

fendant has presented evidence of unliquidated damages in reduction of the fixed amount sought by the plaintiff. Id. at 426-427. In addition to the fire insurance loss, there was evidence the bank was named payee under a loss payable clause in breach of warranty insurance procured by McIver, and that the bank impaired the value of the collateral by failing to pursue a potential claim for available coverage which could have reduced or eliminated the amount due on the note. Although it is unclear what the obligations of the bank may have been to Miller to seek collection of any insurance loss, this issue was not raised by the bank below, and we do not address it. See *Liberty Nat. Bank &c. v. Interstate Motel Dev., Inc.*, 346 FSupp. 888, 890-891 (S.D. Ga. 1972).

"On appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict." (Citations and punctuation omitted.) *Catlett v. Catlett*, 193 Ga. App. 399, 400 (388 SE2d 14) (1989). We find no error in the trial court's denial of the motion for new trial. *Peterson v. First Franklin Fin. Corp.*, 201 Ga. App. 849, 850-851 (412 SE2d 612) (1991).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED APRIL 29, 1993.

*Pipkin & Williams, James G. Williams*, for appellant.
*Lane & Gossett, Roger B. Lane, Mark J. Bujold*, for appellees.