## A92A0841. ANDREWS et al. v. MESSINA.
(426 SE2d 641)

SOGNIER, Chief Judge.

Henry and Linda Andrews brought suit against wife and husband, Tonda and Darcy Messina,[1] individually and "as partners, d/b/a Messina & Associates," to recover damages for breach of contract and fraudulent misrepresentations allegedly made by Mr. Messina concerning the Andrews' purchase of a new house. The trial court granted Ms. Messina's motion for summary judgment, and this appeal ensued.

The record establishes that appellants entered into a contract on July 20, 1988 for the purchase of a new home. The contract was signed by Mr. Messina as "seller." An exhibit attached to the contract set forth a punch list and also provided that "builder" (whose iden-

---

[1] A suggestion of death of Darcy Messina has been filed in this case.

tity was not set forth in the contract) would finish the basement on a cost-plus basis. The sale closed on August 19, 1988 with Mr. Messina alone signing the warranty deed and the closing documents. It is uncontroverted that Ms. Messina (hereinafter appellee) did not sign, either individually or in a representative capacity, any of the documents executed in connection with the sale of appellants' home.

1. To the extent appellants contend appellee is liable to them because she was a "secret or dormant" business partner or joint venturer "in" the entity appellants denominate "Messina & Associates," we find no error in the trial court's grant of appellee's summary judgment motion. The evidence is uncontroverted that "Messina & Associates" is actually the legal entity of "Messina & Associates, Inc.," a Georgia corporation whose valid articles of incorporation and applicable corporate registration form were proffered into evidence.[2] These documents and the affidavits of both appellee and Mr. Messina established that appellee is not an officer, director, or shareholder of Messina & Associates, Inc. (hereinafter "M & A"). No contention was made and no evidence was adduced to pierce M & A's corporate veil. See *Marett v. Professional Ins. Careers*, 201 Ga. App. 178, 181-182 (1) (b) (410 SE2d 373) (1991). Thus, the trial court did not err by concluding appellee was not a partner "in" M & A and by granting summary judgment to appellee on this issue.

2. Construed liberally, appellants' complaint sets forth the allegation that appellee was a partner or joint venturer "with" M & A or "with" her husband, who averred that he, "d/b/a" M & A, contracted with appellants to construct and sell them a new home. We find no error in the trial court's grant of summary judgment to appellee on appellants' claims inasmuch as their claims are based on appellee's status as an "actual" partner with Mr. Messina or with M & A.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." OCGA § 14-8-6 (a). Both appellee and Mr. Messina averred that appellee was not a business partner with or an agent of M & A and denied that appellee had ever been involved in any partnership or joint venture with Mr. Messina in regard to the construction and sale of appellants' home. Both also averred that appellee has never had an interest in the profits and losses of M & A and had no interest in the profits and losses with regard to the construction of appellants' home.

Against this positive evidence, appellants adduced only circumstantial evidence in the form of the affidavit of the teller at the bank used by the Messinas and their businesses, in which the teller identi-

---

[2] It appears from statements made by counsel to the trial court during the hearing on the summary judgment motion that Messina & Associates, Inc. had instituted bankruptcy proceedings.

fied documents reflecting the deposit and withdrawal of funds, all personally handled by appellee, between M & A accounts and joint accounts in the name of both appellee and Mr. Messina, as well as transactions between M & A accounts and an account in the name of Delicious Enterprises, Inc., which the teller averred was appellee's "business account." Appellants argue a jury could infer from the bank teller's affidavit and accompanying documents that the funds shown to have been transferred out of M & A's account were actually "profits" in the alleged partnership and that because these funds were deposited either into appellee's joint accounts with Mr. Messina or into an account of Delicious Enterprises, Inc., a jury could infer that the money was going to appellee as her share of the profits and thus could conclude appellee was a partner with M & A or Mr. Messina. See OCGA § 14-8-7 (4). We do not agree.

"[I]n deciding a motion for summary judgment, 'a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists. (Cits.)' . . . [Cit.]" *Mitchell v. Haygood's Hauling &c.*, 194 Ga. App. 671, 672 (1) (391 SE2d 481) (1990). The inferences appellants draw from the transfer of money into accounts bearing the name of appellee or her business do not demand a finding that those transferred sums constituted appellee's share of the profits in her alleged partnership with M & A or Mr. Messina and thus have no probative value against appellee's positive and uncontradicted evidence that she was not a partner and did not have any interest in the profits from the construction of appellants' home or in M & A. Appellants' inferences are therefore insufficient to create a conflict in the evidence so as to require its submission to a jury, id., and summary judgment to appellee was proper. See *Southeastern Wholesale Supply Co. v. Guevara*, 191 Ga. App. 600, 601 (382 SE2d 685) (1989).

3. Appellants' complaint can also be construed as alleging the existence of a partnership by estoppel. OCGA § 14-8-16 (a) provides that when a person "by words spoken or written or by conduct" represents herself or consents to another representing her to a third party as a partner with a person not an actual partner, she "is liable to [the third party] who has, on the faith of such representation, given credit to the actual or apparent partnership." In interpreting the predecessor to this statute, the appellate courts have held that a person who holds herself out to be a partner, although she in fact has no partnership interest in the business, may be estopped from denying the partnership relationship where the third party was misled by the putative status and acted to his detriment in reliance upon the misrepresentation. *Peckham v. Metro Steel Co.*, 126 Ga. App. 685, 686 (191 SE2d 559) (1972); *English v. Moore*, 28 Ga. App. 265, 266 (1)

(110 SE 737) (1922). See also *Chambliss v. Hall*, 113 Ga. App. 96, 99 (147 SE2d 334) (1966). Application of the doctrine of partnership by estoppel has not been limited to situations where the third party extended credit to the ostensible partner. See *Kaplan v. Gibson*, 192 Ga. App. 466, 467 (1) (385 SE2d 103) (1989) (evidence sufficient to support finding that physicians were ostensible partners under OCGA § 14-8-16 to render them liable in medical malpractice suit).

It is uncontroverted there are no written documents indicating that appellee was a partner with Mr. Messina or M & A, see *American Cotton College v. Atlanta Newspaper Union*, 138 Ga. 147, 148 (4) (b) (74 SE 1084) (1912); compare *Bloise v. Trust Co. Bank*, 170 Ga. App. 405, 407 (2) (317 SE2d 249) (1984), and appellants do not assert that appellee and her husband expressly stated to them that appellee was a partner. Compare *Kaplan*, supra.

Rather, appellants rely on appellee's conduct in managing certain aspects of the construction of appellants' home and appellant Henry Andrews' averral that Mr. Messina told him that "[appellee] handles all the finances and business records." As to appellee's conduct, appellants averred in their affidavits that appellee had arranged for subcontractors and others to perform work at the construction site; authorized payment for work to be performed; inspected problems in the home and supervised repairs; and explained to appellants the basis for charges in bills submitted to them. Appellant Linda Andrews averred that it was "clear from my dealings with [appellee] that she was directly involved in the decision making, operation and management of the Messinas' residential construction business, including the corrective work and additional work on [appellants'] residence." Henry Andrews averred that based on the Messinas' "conduct and the express statements both of them made to me . . . with regard to [appellee's] involvement with [Mr.] Messina in the residential construction business, . . . it was communicated to me and it was my clear understanding that [appellee] was a partner with [Mr.] Messina in the residential construction business and with regard to the sale and construction work on my property. Therefore, in all my dealings with the Messinas, I relied on their conduct and their representations that [appellee] was a partner with [Mr.] Messina in the residential construction business."

Appellants also proffered affidavits from a subcontractor setting forth how he had received payment for work on appellants' home from appellee, and from several parties setting forth the manner in which appellee had assumed a major role in the sale and construction of another residence.

Even assuming, arguendo, that this evidence was sufficient to support a finding that appellee represented herself, or was represented by Mr. Messina, as a business partner with him, it is uncontro-

verted that appellants did not act in reliance to their detriment on the representation. Averrals by Linda Andrews reflect that she did not meet appellee until *after* the closing and thus she could not have entered into the purchase of the residence in reliance upon appellee's words or conduct. See *Pope v. Triangle Chem. Co.*, 157 Ga. App. 386, 389-390 (4) (277 SE2d 758) (1981). Likewise, Henry Andrews indicated in his affidavit that the reasons leading him to conclude appellee was Mr. Messina's business partner (i.e., Mr. Messina's statement and appellee's conduct detailed in his affidavit) occurred *after* the closing. This conflicts with Henry Andrews' averral that he relied upon appellee's status as an ostensible partner with Mr. Messina during "*all* my dealings with the Messinas" (emphasis supplied), including, arguably, the negotiations towards and the closing of the sales transaction. No explanation is offered for this apparent contradiction and, applying the "contradictory testimony rule," see *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430-431 (2) (408 SE2d 443) (1991), the trial court was authorized to eliminate the favorable portion of Henry Andrews' contradictory testimony, see *Stone v. Dayton Hudson Corp.*, 193 Ga. App. 752, 755 (388 SE2d 909) (1989), and conclude that appellants did not act in reliance on appellee's alleged partnership with Mr. Messina when they entered into the agreements that form the basis of their breach of contract claim.

Summary judgment was likewise proper to appellee on the partnership by estoppel theory as to appellants' fraudulent misrepresentation claim because there is no evidence that appellants acted in reliance on appellee's alleged partnership in regard to the fraudulent misrepresentations, all of which were made by Mr. Messina and involved representations either that the house would be built according to applicable building codes in a workmanlike manner or that certain corrective work would be performed. Accord *Pope*, supra at 389 (4).

Therefore, because the record establishes that appellee was not an actual partner with Mr. Messina or M & A and no question of fact regarding partnership by estoppel was raised by the evidence, the trial court correctly granted summary judgment in favor of appellee. See generally *Southeastern Wholesale Supply Co.*, supra.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur. McMurray, P. J., disqualified.*

DECIDED DECEMBER 4, 1992 —
RECONSIDERATION DENIED DECEMBER 16, 1992

*McCalla, Raymer, Padrick, Cobb, Nichols, Echols & Clark, C. James Jessee, Jr., Charney K. Berger,* for appellants.

*Kaufman, Chaiken & Sorensen, Robert J. Kaufman, Fredric*

*Chaiken*, for appellee.